IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DOLORES-ROSE DAUENHAUER and HELEN E. CHAMBERLAIN, <br><br> Plaintiffs, <br><br> v. <br><br> THE BANK OF NEW YORK MELLON, et al., <br><br> Defendants. | No. 3:12-cv-01026 <br> Judge Nixon <br> Magistrate Judge Knowles <br><br> JURY DEMAND |

## ORDER

Pending before the Court is a Motion for Temporary Restraining Order ("Motion") filed by Plaintiffs Dolores-Rose Dauenhauer and Helen E. Chamberlain, who seek to enjoin Defendants Bank of New York Mellon ("BNYM"), Bank of America, N.A. ("BoA"), Mortgage Electronic Registration Systems, Inc. ("MERS"), ReconTrust, Inc., and 100 unnamed Does, from conducting a non-judicial foreclosure sale of Plaintiffs' residence. (Doc. No. 9.) A temporary restraining order issued by the Circuit Court for Davidson County has remained in effect since September 2012, per Tennessee Rule of Civil Procedure 65.04(5). (Doc. Nos. 1-1 at 180–82; 17.) For the reasons stated below, the Court **DENIES** the Motion and **DISSOLVES** the state court restraining order.

I. BACKGROUND

   *A. Factual Background*

Ms. Dauenhauer and Ms. Chamberlain own property at 514 Neilwood Drive in Nashville, Tennessee. (Doc. No. 1-1 at 4.) On March 30, 2007, Ms. Dauenhauer executed a promissory note ("Note") for $550,000.00 with America's Wholesale Lender, then a fully owned subsidiary of Countrywide Home Loans. (Doc. Nos. 1-1 at 4; 13-2.) On the same day, Ms. Dauenhauer,

1

Frank C. Dauenhauer, and Ms. Chamberlain also executed a Deed of Trust on the property, naming America's Wholesale Lender as the lender and Defendant MERS—an electronic mortgage recordation database—as the Deed of Trust's nominee and beneficiary. (Doc. No. 1-1 at 33.) Defendant BoA purchased Countrywide Home Loans in 2008.[1] (Doc. No. 1-1 at 4.)

Plaintiffs allege that BoA sold their loan before or at the close of the loan transaction, and that their loan was placed into a securitized trust ("Trust") with other mortgages and resold to investors. (Doc. No. 1-1 at 8, 11.)

The record contains two letters Plaintiffs received that indicated they were in default on the loan. A letter from Sept. 9, 2009, stated that a default had occurred and Defendant BNYM—which then claimed to be the beneficiary of Plaintiffs' Deed of Trust—had named Defendant ReconTrust as a substitute trustee for the Deed of Trust. (Doc. No. 1-1 at 48.) Plaintiffs also received a letter and notice from ReconTrust dated May 23, 2011, stating that their default had triggered acceleration of the loan and that ReconTrust would hold a non-judicial foreclosure sale of the property on July 1, 2011. (Doc. No. 1-1 at 136–41.) Plaintiffs also received a letter from BoA in August 2012 that they allege stated that they were eligible for a principal reduction modification on the loan (Doc. No. 1-1 at 7); a copy of that letter filed by Defendants shows the letter was a form notice informing Ms. Dauenhauer that she may qualify for a federal loan program (Doc. No. 27-1). Plaintiffs allege they tried repeatedly to reach a BoA officer to discuss the offer, but were unsuccessful. (Doc. No. 1-1 at 7.)

Since initiating court proceedings, Plaintiffs state they have received two additional letters from BNYM and ReconTrust stating that Defendants would conduct non-judicial foreclosure sales of the property on October 15, 2012, and October 29, 2012. (Doc. Nos. 1-1 at

---

[1] For convenience, the Court will adopt Plaintiffs' convention of referring to BoA when discussing the actions of America's Wholesale Lender, the original lender.

167; 9 ¶ 24.) Neither letter has been produced. Plaintiffs allege they have not received an accounting of their loan and, until they receive one, they deny they are in default on the loan. (Doc. No. 1-1 ¶ 17.)

*B. Procedural Background*

On August 31, 2012, Plaintiffs filed a Complaint in Davidson County Circuit Court (Doc. No. 1-1 at 1–30) and later filed for a temporary restraining order, alleging Defendants planned a non-judicial foreclosure sale for the property on October 15, 2012 (Doc. No. 1-1 at 163–79). On September 27, 2012, a state court judge issued a restraining order preventing the sale, pending a state court hearing. (Doc. No. 1-1 at 180–82.)

Defendants timely removed the case to federal court. (Doc. No. 1.) Plaintiffs then filed a Motion for Temporary Restraining Order on October 10, 2012, alleging that BNYM and ReconTrust had initiated another non-judicial foreclosure sale for October 29, 2012. (Doc. No. 9 ¶ 24.) Defendants filed a Response (Doc. No. 13), and Plaintiffs filed a Reply (Doc. No. 18). The Court held hearings on Plaintiffs' Motion on October 24, 2012, and November 29, 2012. Throughout this time, the state court temporary restraining order has remained in effect, per Tennessee Rule of Civil Procedure 65.04(5), and Defendants have agreed not to foreclose on the property at issue pending resolution of the Motion. (Doc. No. 17.)

II. **LEGAL STANDARD**

Plaintiffs seek injunctive relief to prevent Defendants from conducting a non-judicial foreclosure sale of the Neilwood Drive property. (Doc. No. 9 ¶ 22.) Courts consider four factors when deciding whether to grant temporary or preliminary injunctive relief under Federal Rule of Civil Procedure 65 ("Rule 65"): "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3)

whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction." *Hunter v. Hamilton Cnty. Bd. of Elections*, 635 F.3d 219, 233 (6th Cir. 2011) (citation omitted). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted). Before issuing an injunction, a court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 542 (1987).

In addition, in actions brought under federal diversity jurisdiction, a district court generally must apply the substantive law of the forum state. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Hanna v. Plumer*, 380 U.S. 460, 471–74 (1965) (when a specific and valid federal rule of procedure covers a situation, the court must apply it). While Rule 65 dictates the standard under which a district court may issue a preliminary injunction, "state law determines whether the state law cause of action can support an injunction." *John Paul Mitchell Sys. v. Quality King Distribs., Inc.*, 106 F. Supp. 2d 462, 478 (S.D.N.Y. 2000). Thus, when state law both creates a cause of action and precludes injunctive relief under that cause of action, a federal court is precluded from granting injunctive relief. *Id.* (citing James W. Moore et al., 13 Moore's Federal Practice ¶ 65.07[2] (3d ed. 2000); *Sims Snowboards, Inc. v. Kelly*, 863 F.2d 643, 647 (9th Cir. 1988)). Otherwise, "[i]t would be anomalous to grant preliminary relief on a state law claim that would be unavailable were this case brought in a state court." *Id.*

By statute, Tennessee law offers limited relief to homeowners seeking to enjoin non-judicial foreclosure sales before they occur, Tenn. Code Ann. §§ 29-23-201 to 204 (West 2012), and requires that a party seeking such relief "distinctly state how, when, and to whom the debt or

4

any part of the debt . . . has been paid, or any circumstances of fraud which vitiate the contract." Tenn. Code Ann. § 29-23-202. In other words, there are only two grounds for a court to enjoin such a sale: repayment of debt owed, or fraud that would vitiate a mortgage contract. *Id.* By contrast, post-sale remedies include monetary damages for procedurally improper foreclosure sales, Tenn. Code Ann. §§ 35-5-106, 107, damages for wrongful foreclosure, *Welch v. Greenalge*, 49 Tenn. 209, 212 (Tenn. 1870), and injunctive relief to set aside completed sales, *Holt v. Citizens Cent. Bank*, 688 S.W. 414, 416 (Tenn. 1984); *Mitchell v. Sherrell*, 11 Tenn. App. 210, 220–21 (Tenn. Ct. App. 1929). This Court notes this distinction—between prospective relief to enjoin a future sale, governed by statute, and injunctive relief to set aside a past sale, governed by case law—which Plaintiffs ignore in their briefing. (Doc. No. 9 at 10–13.) *See* Southeast Tennessee Legal Services, Foreclosure Law and Procedures in Tennessee, 4–5, http://www.selegal.org/Foreclosure%20Procedures%20in%20Tennessee.pdf; John A. Walker, Jr., *Simple Real Estate Foreclosures Made Complex: The Byzantine Tennessee Process*, 62 Tenn. L. Rev. 231, 264–65 (1995).

Thus, where a plaintiff attempts to enjoin a future non-judicial sale from occurring, the Court applies the Rule 65 standard to the limited grounds for such relief under Tennessee Code Annotated § 29-23-202.

### III. ANALYSIS

#### A. *Likelihood of Success on the Merits*

The Court finds Plaintiffs are unlikely to meet the statutory requirements to enjoin a non-judicial foreclosure sale. First, they have failed to show in their filings that any payment has been made on their mortgage to satisfy the debt they owe. *See* Tenn. Code Ann. § 29-23-202. While Plaintiffs deny in their Complaint that they are in default, they do not state that they have

made any payments on the debt. (Doc. No. 1 ¶ 17.) In addition, Plaintiffs' counsel at the November 29, 2012, hearing explicitly stated that Plaintiffs have not made payments on the loan and are unable to meet the more than $5,000 in monthly obligations.

Second, Plaintiffs are unlikely to establish that fraud has vitiated their contract. *See* Tenn. Code Ann. § 29-23-202. In their Complaint, Plaintiffs allege several instances of fraudulent misrepresentation in the loan transaction, which under Tennessee law requires they show: (1) Defendants made a misrepresentation of present or past fact; (2) the representation was false when made; (3) representation was made regarding a material fact; (4) the representation was made knowingly, recklessly, or without regard to its truth; (5) Plaintiffs reasonably relied on the representation; and (6) Plaintiffs suffered damage as a result of the reliance on the false representation. *Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W. 3d 301, 311 (Tenn. 2008).

Plaintiffs first allege that BoA fraudulently misrepresented to Plaintiffs that their loan payments would be used to pay off their mortgage debt, when, in fact, BoA knew that the mortgage would be securitized and Plaintiffs' money would be pooled to pay for other loans in the securitized pool that were in default. (Doc. No. 1-1 at 21.) Plaintiffs allege they would not have entered into the agreement had they known these representations were false. (*Id.* at 22.)

Plaintiffs have so far offered no evidence to support this allegation of misrepresentation or to support the conclusion that it, if true, actually damaged Plaintiffs. For instance, they have not shown any evidence about how any potential loan payments they made were used by Defendants or that the payments were not applied to the balance of their loan, beyond a vague and inconclusive assertion in the Motion that payments "were not applied according to the terms of the Note." (Doc. No. 9 ¶ 47.)

In addition, while Plaintiffs devote significant energy to allegations relating to the securitization process generally, they have not alleged that securitization materially affected their obligations to pay back their loan under the Note, and they appear to concede that BoA remained their loan servicer (Doc. No. 1-1 at 7, 10). Nor have they provided any case law to support the conclusion that securitization modifies a borrower's loan obligations. They nonetheless offer conflicting conclusions regarding their status under the Note: on one hand, they argue that the investors who purchased securities that included Plaintiffs' loan are now the owners of the Note (Doc. No. 9 ¶ 41); on the other hand, they insist they owe no obligation under the Note to these investors (Doc. No. 9 ¶ 8 (investors "are collectively the holder in due course of an instrument . . . in which the PLAINTIFFS ARE NOT A PARTY")). By contrast, as Defendants argue in their Response (Doc. No. 13 at 4–5), other courts have concluded as a matter of law that securitization alone does not render a note or deed unenforceable, altering a borrower's obligation to pay back a loan. *See Samples v. Bank of Am., N.A.*, No. 3:12-cv-44, 2012 WL 1309135, *3–5 (E.D. Tenn. Apr. 16, 2012); *Ramirez-Alvarez v. Aurora Loan Svc., L.L.C.*, No. 1:09-cv-1306, 2010 WL 2934473, *3–5 (E.D. Va. July 21, 2010); *Commonwealth Prop. Advocates, L.L.C. v. First Horizon Home Loan Corp.*, No. 2:10-cv-375, 2010 WL 4788209, *2 (D. Utah Nov. 16, 2010). Rather, securitization creates "a separate contract, distinct from Plaintiff's debt obligations under the reference credit (i.e., the Note)." *Larota-Florez v. Goldman Sachs Mortg. Co.*, 719 F. Supp. 2d 636, 642 (E.D. Va. 2010). Without securitization affecting their obligations and status under their Note and Deed of Trust, Plaintiffs likely cannot show that the alleged misrepresentations were material or caused damages.

Relatedly, Plaintiffs allege BoA also misrepresented that it was the funding source of the loan transaction (Doc No. 1-1 at 22) and concealed the identities of the actual lenders, who were

the investors who purchased the securities (Doc. Nos. 1-1 at 8; 9 ¶¶ 42–43). This appears to be another challenge to the propriety of the loan's securitization. Again, Plaintiffs have offered no evidence to support this allegation and have not alleged that this supposed concealment altered Plaintiffs' obligations under the Note or damaged Plaintiffs.

Plaintiffs also allege that BNYM fraudulently misrepresented it was the holder in due course of the Note and Deed of Trust in its September 9, 2009, letter initiating foreclosure (Doc. No. 1-1 at 22–23), while in fact the holder in due course of their Note cannot be ascertained (Doc. No. 9 ¶ 42). By statute in Tennessee, a promissory note is a negotiable instrument, unless it contains a statement that it is non-negotiable, Tenn. Code Ann. § 47-3-104 (West 2012), and thus may be transferred to another party who receives the right to enforce the instrument, Tenn. Code Ann. §§ 47-3-201, 203, 301, 302 (West 2012). In addition, a "holder in due course" is a party who takes a negotiable instrument (i) for value, (ii) in good faith, and (iii) without knowledge of any apparent defect in the instrument nor any notice of dishonor. Tenn. Code Ann. § 47-3-302. Under state law, a holder of a note does not need to show proof of assignment of the Deed of Trust to enforce a note. *W.C. Early Co. v. Williams*, 186 S.W. 102, 103–04 (Tenn. 1916); *Samples*, 2012 WL 1309135 at *4. In other words, Tennessee law "treat[s] the note as the principal thing and the mortgage [or deed of trust] as the incident" that follows the note. *W.C. Early Co.*, 186 S.W. at 104.

The Court finds this allegation regarding BNYM's misrepresentation is also likely to fail. Because the Note does not contain a provision stating it is non-negotiable (Doc. Nos. 23-1; 23-2 ¶ 20), it is negotiable under state law. Defendants have filed with the Court copies of the original Note in BYNM's possession (Doc. No. 23-1), the Deed of Trust (Doc. No. 23-2), and the assignment of the Deed of Trust from MERS to BNYM (Doc. No. 23-3), which together show

that BYNM is likely to be the holder in due course of the Note with the right to foreclose by a non-judicial sale under the terms of the Deed of Trust (Doc. No. 23-3 ¶ 22). By contrast, while Plaintiffs state in their Motion that any assignments of the Note were made in bad faith or with notice that they were invalid, they do not offer any evidence or allege facts to support this statement, aside from asserting that any assignment would have violated the Trust's status because the loan was already allegedly in default. (Doc. No. 9 ¶ 47.) The Court finds this assertion about the Trust's status—unsupported by law or fact—does not show the transfer of the Note to BNYM was invalid, made in bad faith, or that BNYM itself had knowledge of a defect. Without more, Plaintiffs cannot succeed.

Plaintiffs further allege that BNYM and ReconTrust maliciously misrepresented that a signatory to a Substitute Trustee Notice worked for BNYM and that BNYM misrepresented itself as the beneficiary of the Deed of Trust in the September 2009 letter. (Doc. No. 1-1 at 22–23.) Plaintiffs allege that they relied on these representations in an attempt to negotiate with BoA in 2011, rather than seek judicial intervention. (Doc. No. 1-1 at 23.) However, the Court finds Plaintiffs are also unlikely to succeed on these allegations, as Plaintiffs have not shown any evidence or alleged any facts explaining how they relied on or were damaged by the 2009 misrepresentations. Simply alleging that they received a letter with a misleading signature and unfamiliar bank name, and that they then waited two years to attempt to modify their loan, does not likely amount to fraudulent misrepresentation.

Finally, Plaintiffs allege that BoA encouraged and requested an overstated appraisal of Plaintiffs' property in order to justify the amount of their loan. (Doc. No. 1-1 at 23–24.) While the Court is sympathetic to this allegation as a basis for a fraudulent misrepresentation claim, Plaintiffs again have not offered any evidence nor alleged sufficient facts to lead the Court to

find they will likely succeed on the claim: for instance, they have not stated how much their house was actually worth at the time of its appraisal; they have not alleged that BoA had a financial interest in inflating the value of the house (Doc. No. 1-1 at 9); they have not explained how BoA encouraged the overassessment by the "independent appraiser" (Doc. No. 1-1 at 8); nor have they alleged that BoA regularly engaged in these practices in this region or elsewhere (Doc. 1-1 at 5–6).

In sum, the Court finds Plaintiffs unlikely to succeed on the merits of their fraud claims.

*B. Other Factors*

The Court also finds the balance of the other factors for temporary or preliminary injunctive relief—irreparable injury, harm to others caused by the injunction, and the public interest, *Hunter*, 635 F.3d at 233 —does not favor Plaintiffs.

On one hand, Plaintiffs claim irreparable injury based on loss of and eviction from their home (Doc. No. 9 ¶ 24), and the Court agrees that the loss of property would be an irreparable injury for which damages at law would be inadequate. On the other hand, given that Defendants have offered evidence that they possess the original Note (Doc. No. 23) and were assigned the Deed of Trust (Doc. No. 23-3), they might be harmed if their right to collect on Plaintiffs' obligations continued to be enjoined by the courts based on claims that are unlikely to succeed. Plaintiffs' argument that Defendants would suffer no harm from an injunction because they have "no legal standing" to foreclose fails in light of these facts. (Doc. No. 9 ¶ 25.) And, while the public has an interest in ensuring home foreclosures are properly conducted—particularly non-judicial foreclosure sales that generally advance without judicial scrutiny—the public also has an interest in seeing that contract obligations are upheld and loans are repaid. Thus, while the potential injury to Plaintiffs is significant and irreparable in nature, the Court is persuaded by the

overwhelming evidence that they are unlikely to succeed on the merits of their claims and by the public's interest. Thus, the Court finds a temporary or preliminary injunction should not issue.

IV. **CONCLUSION**

For the reasons above, the Court **DENIES** Plaintiffs' Motion for temporary injunctive relief (Doc. No. 9) and **DISSOLVES** the state court injunction.

It is so ORDERED.

Entered this the ____15th____ day of January, 2013.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT