**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **DOLORES-ROSE DAUENHAUER and** | ) | |
| **HELEN E. CHAMBERLAIN,** | ) | |
| | ) | **No. 3:12-cv-01026** |
| **Plaintiffs,** | ) | |
| | ) | **Judge Nixon** |
| **v.** | ) | **Magistrate Judge Knowles** |
| | ) | |
| **THE BANK OF NEW YORK MELLON, et al.,** | ) | **JURY DEMAND** |
| | ) | |
| **Defendants.** | ) | |

<u>**ORDER**</u>

Pending before the Court is Defendants Bank of New York Mellon ("BNYM"), Bank of

America, N.A. ("BoA"), Mortgage Electronic Registration Systems, Inc. ("MERS"),

MERSCORP Holdings, Inc., ("MERSCORP"), and ReconTrust, Inc.'s ("ReconTrust") Motion to

Dismiss Plaintiffs' Complaint ("Motion"). (Doc. No. 11.) Also pending before the Court is

Plaintiffs' Motion to Reconsider And/or Alter or Amend Order Denying Motion for Temporary

Restraining Order ("Motion to Reconsider"). (Doc. No. 32.) For the reasons stated below, the

Court **GRANTS** the Motion to Dismiss and **DISMISSES** Plaintiffs' Complaint. Plaintiffs'

Motion to Reconsider is therefore **TERMINATED AS MOOT**.

**I. BACKGROUND**

*A. Factual Background[1]*

Dolores-Rose Dauenhauer and Helen E. Chamberlain own property located at 514

Neilwood Drive in Nashville, Tennessee. On March 30, 2007, Ms. Dauenhauer executed a

promissory note ("Note") for $550,000.00 with America's Wholesale Lender, then a fully owned

subsidiary of Countrywide Home Loans. On the same day, Ms. Dauenhauer, Frank C.

---

[1] Unless otherwise noted, allegations in this section are taken from Plaintiffs' Complaint. (Doc. No. 1-1.)

Dauenhauer, and Ms. Chamberlain also executed a Deed of Trust ("DoT") on the property, naming America's Wholesale Lender as the lender and Defendant MERS—an electronic mortgage recordation database—as the Deed of Trust's nominee and beneficiary. Defendant BoA purchased Countrywide Home Loans in 2008.[2]

Plaintiffs allege that BoA sold their loan before or at the close of the loan transaction, and that their loan was placed into a securitized trust ("Trust") with other mortgages and resold to investors.

Plaintiffs received at least two letters indicating they were in default on their loan. A letter dated Sept. 9, 2009, stated that a default had occurred and Defendant BNYM—which then claimed to be the beneficiary of Plaintiffs' DoT—had named Defendant ReconTrust as a substitute trustee for the DoT. (Doc. No. 1-1 at 48.) Plaintiffs also received a letter and notice from ReconTrust, dated May 23, 2011, stating that Plaintiffs' default had triggered acceleration of their loan and that ReconTrust would hold a non-judicial foreclosure sale of the property on July 1, 2011. (Doc. No. 1-1 at 136–41.)

Plaintiffs received a letter from BoA in August 2012 stating they were eligible for a principal reduction modification on their loan; the letter was, in fact, a form notice informing Ms. Dauenhauer that she may qualify for a federal loan program. (Doc. No. 27-1.) Plaintiffs tried repeatedly to reach a BoA officer to discuss the offer, but were unsuccessful.

Since initiating court proceedings, Plaintiffs state they have received two additional letters from BNYM and ReconTrust stating that Defendants would conduct a non-judicial foreclosure sale of the property on October 15, 2012, and October 29, 2012. Plaintiffs allege

---

[2] For convenience, the Court will adopt Plaintiffs' convention of referring to BoA when discussing the actions of America's Wholesale Lender, the original lender.

they have not received an accounting of their loan and, until they receive one, they deny they are in default.

*B. Procedural Background*

On August 31, 2012, Plaintiffs filed a Complaint in Davidson County Circuit Court (Doc. No. 1-1 at 1–30) and later filed for a temporary restraining order, alleging Defendants planned to conduct a non-judicial foreclosure sale of their property on October 15, 2012 (Doc. No. 1-1 at 163–79). On September 27, 2012, a state court judge issued a restraining order preventing the sale, pending a state court hearing. (Doc. No. 1-1 at 180–82.)

On October 9, 2012, Defendants removed the case to this Court. (Doc. No. 1.) On October 10, 2012, Plaintiffs filed a Motion for Temporary Restraining Order, alleging that BNYM and ReconTrust had rescheduled the non-judicial foreclosure sale of their property for October 29, 2012. (Doc. No. 9 at 24.) The Court subsequently denied the motion and dissolved the state court temporary restraining order on January 16, 2013. (Doc. No. 31.) On January 21, 2013, Plaintiffs filed a Motion to Reconsider (Doc. No 32), along with a Memorandum in Support (Doc. No. 33) and two exhibits (Doc. Nos. 33-1; 33-2). On January 31, 2013, Defendants filed a Response in Opposition. (Doc. No. 36.)

On October 15, 2012, Defendants filed a Motion to Dismiss (Doc. No. 11), along with a Memorandum in Support (Doc. No. 12) and three exhibits (Doc. Nos. 12-1 to 12-3). On November 4, 2012, Plaintiff filed a Response in Opposition (Doc. No. 19), along with an exhibit (Doc. No. 19-1). On November 29, 2012, Defendants filed a Reply (Doc. No. 27), along with an exhibit (Doc. No. 27-1). The Court granted Plaintiffs leave to file a Sur-Reply, which Plaintiffs filed on December 4, 2012. (Doc. No. 30.)

## II.  LEGAL STANDARD

To withstand a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The Supreme Court has clarified the *Twombly* standard, stating that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  A complaint that pleads facts "'merely consistent with' defendant's liability . . . 'stops short of the line between possibility and plausibility' of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557.)

When ruling on a defendant's motion to dismiss, the court must "construe the complaint liberally in the Plaintiffs' favor and accept as true all factual allegations and permissible inferences therein." *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994).  The court must allow "a well-pleaded complaint [to] proceed even if it strikes a savvy judge that actual proof of those facts is improbable." *Twombly*, 550 U.S. at 556.  However, a "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Id.* at 555.  "'[A] legal conclusion couched as a factual allegation' need not be accepted as true on a motion to dismiss," *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (citation omitted), and mere recitation of the elements of a cause of action "or an "unadorned, the-defendant-unlawfully-harmed-me accusation" will not do, *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.  While the court must accept "as true all non-conclusory allegations in the complaint," *Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009), it does not have to accept unsupported legal conclusions. *Iqbal*, 556 U.S. at 678.

While the court will not generally consider matters outside of the pleadings when ruling on a motion to dismiss, "the court may [] consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice." *Wyser-Pratte Mgmt. Co., Inc. v. Telxon Corp.*, 413 F.3d 553, 560 (6th Cir. 2005). Any "[d]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999), *abrogated on other grounds by Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002).

## III.  ANALYSIS

In their Motion, Defendants argue that Plaintiffs' underlying theories about securitization and assignment of their Note are meritless. Defendants then advance multiple arguments for why each count in Plaintiffs' Complaint fails to state a claim upon which relief can be granted. Defendants also contend that Plaintiffs' Complaint should be dismissed for failure to join a necessary party. The Court first analyzes the parties' arguments regarding securitization and assignment, before addressing Defendants' arguments to dismiss each of Plaintiffs' claims and the issue of necessary parties.

### A.  Securitization, Assignment, and Pooling of Mortgages

Defendants first argue that Plaintiffs' Complaint fails because all of the claims are premised on the erroneous theory that Defendants have no interest in the Neilwood property due to unlawful securitization and assignment of the Note, and entry of the Note and DoT into the Trust—in violation of the Trust's Pooling and Servicing Agreement ("PSA"). (Doc. No. 12 at 5–12.)

#### 1.  Validity of MERS as Nominee and Beneficiary

Plaintiffs argue that because MERS was not the designated lender, it had no authority to assign the Note. (Doc. No. 1-1 at 4.) Defendants argue MERS held an interest in the Note as beneficiary of the DoT and could validly assign the Note in its authority as nominee for the lender and its assigns.

MERS is a company that provides mortgage recording services to lenders and "allows the lenders to trade the mortgage note and servicing rights on the market" with MERS maintaining electronic recordings of each transaction. *Mortg. Elec. Regis. Sys., Inc. v. Neb. Dep't of Banking and Fin.*, 704 N.W.2d 784, 787 (Neb. 2005). "'When the mortgage loan is repaid, MERS, as agent grantor, conveys the property to the borrower.'" *Id.*

Courts have consistently upheld the validity of MERS's role as nominee for a promissory note's lenders and assigns, and as beneficiary under a deed of trust. *See Samples v. Bank of Am., N.A.*, No. 3:12-CV-44, 2012 WL 1309135, at *3–4 (E.D. Tenn. April 16, 2012) (finding claims based on invalid assignment by or the role of MERS in mortgage transactions—where the deed of trust named MERS as the beneficiary and nominee for the lender and its assigns—failed as a matter of law); *In re Mortg. Elec. Regis. Sys. Litig.*, MDL No. 09-2119-JAT, 2011 WL 4550189, at *3–4 (D. Ariz. Oct. 3, 2011) (finding a deed of trust can grant MERS authority as the beneficiary of the deed and nominee for the note holder); *Golliday v. Chase Home Fin.*, *LLC*, No. 1:10-cv-532, 2011 WL 4352554, at *7 (W.D. Mich. Aug. 23, 2011) ("Over the twenty years that MERS has existed, borrowers who have defaulted on their loan obligations have attempted, without success, to attack the validity of the mortgage based on the involvement of MERS.").

Here, the DoT names MERS as a "nominee for Lender and Lender's successors and assigns" and as "the beneficiary under this Security Instrument." (Doc. No. 12-1 at 2.) Several courts have held language identical to that in the DoT grants MERS the authority "to act as the

agent of any valid note holder, including assigning a deed of trust and enforcing a note."

*Samples*, 2012 WL 1309135, at *4. The DoT states "the Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower." (Doc. No. 12-1 at 10.) In addition, the Note states "I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'" (Doc. No. 12-2 at 2.) The Court finds that, under the terms of the Note and DoT, MERS could validly assign the Note—as nominee of the lender or lender's assigns—and could assert an interest in the Neilwood property as beneficiary of the DoT.

### 2. Securitization and Separation of DoT and Note

Plaintiffs next argue that any assignment or transfer of the Note was invalid based on separation of the Note from the DoT and failure to record the assignments. In addition, Plaintiffs argue the securitization of the Note resulted in their debt being satisfied by third parties. Defendants respond that the DoT automatically follows any transfer of the Note, that recordation is not required for an assignment to be upheld, and that securitization of the loan did not alter Plaintiffs' obligations under the Note and DoT.

"It is well settled under Tennessee law that any assignment of a note automatically transfers beneficial ownership of the accompanying deed of trust." *Samples*, 2012 WL 1309135, at *4 (citing *W.C. Early Co. v. Williams*, 186 S.W. 102, 103 (Tenn. 1916)); *see also Gibson v. Mortg. Elec. Regis. Sys., Inc.*, No. 11-2173-STA, 2012 WL 1601313, at *4 (W.D. Tenn. May 7, 2012). "The lien of a mortgage or trust deed passes, without a special assignment thereof, to the indorsee of a note or transferee of the debt secured by the instrument. The policy of the law is to treat the note as the principal thing and the mortgage as the incident." *W.C. Early Co.*, 186 S.W.

at 103–04.  Tennessee law does not require note assignees to record assignments in order to enforce the notes against third parties.  *Id.* at 103 ("in this state we have no statutory requirement that the assignee of notes secured by a mortgage or trust deed must, in order to the preservation of his lien as against third persons, record an assignment of the instrument which secures the same.").

Here, Plaintiffs first argue that because the Note was transferred without the accompanying DoT, the transaction was a nullity.  (Doc. No. 1-1 at 11, 20 (citing Restatement (Third) of Property (Mortgages) § 5.4 cmt. e. (1997)).)  However, under Tennessee law, when Defendants transferred the Note, the DoT automatically followed.  *See Golliday*, 2011 WL 4352554, at *7 (finding that mortgagors cannot invalidate a mortgage written in favor of MERS based on the "separation" argument because of "the general legal principle that a promissory note and the mortgage securing that note are 'inseparable,' and the one cannot be assigned without the other.").  The Court finds that any transfer of the Note implicitly transferred the DoT and did not destroy the assignee's right to enforce the terms of either document.

Plaintiffs next argue that Defendants' failure to record assignments of the Note rendered the assignments unenforceable.  (Doc. No. 1-1 at 5–7.)  The Court finds this argument fails because, as stated above, Tennessee does not require recordation of an assignment in order for the assignee to enforce the lien.

Plaintiffs' third argument is that securitization of the Note resulted in third parties paying Plaintiffs' debt, thereby releasing Plaintiffs from their loan obligation.  (Doc. No. 1-1 at 13–14.)  The Court finds no support for Plaintiffs' argument that their loan is unenforceable because it was securitized.  As a matter of law, securitization alone does not render a note or deed of trust unenforceable and does not alter a borrower's obligation to pay back his or her loan.  *See*

*Samples*, 2012 WL 1309135, at *3–5; *Ramirez-Alvarez v. Aurora Loan Servs., LLC*, No. 1:09cv1306, 2010 WL 2934473, at *3–5 (E.D. Va. July 21, 2010); *Commonwealth Prop. Advocates, LLC v. First Horizon Home Loan Corp.*, No. 2:10-cv-375, 2010 WL 4788209, at *2 (D. Utah Nov. 16, 2010).  Rather, securitization creates "a separate contract, distinct from [a p]laintiff's debt obligations under the reference credit (i.e. the Note)." *Larota-Florez v. Goldman Sachs Mortg. Co.*, 719 F. Supp. 2d 636, 642 (E.D. Va. 2010).  The fact that a note is securitized "would not absolve plaintiff from having to make payments on his loan or somehow shield plaintiff's property from foreclosure." *Searcy v. EMC Mortg. Corp.*, No. 1:10-CV-0965-WBH, 2010 U.S. Dist. LEXIS 119975, at *2 (N.D. Ga. Sept. 30, 2010).

Plaintiffs also allege that they were not advised that BoA would sell their Note or that their Note could be repeatedly sold and assigned to third parties.  (Doc. No. 1-1 at 10–11.)  The Court finds Plaintiffs' allegations to be contrary to the plain language of their Note and DoT, which indicate that the Note could be sold multiple times.  *See supra* pp. 6–7.

Finally, Plaintiffs allege that Defendants' securitization of the Note into the Trust, violated the Trust's PSA and therefore BNYM, as trustee, did not have the authority to foreclose on behalf of the Trust.  (Doc. No. 1-1 at 17–18.)  Courts have consistently rejected borrowers' requests to have mortgage assignments and foreclosures invalidated due to non-compliance with PSA provisions, based on the borrowers' lack of standing.  *See, e.g., In re Correia*, 452 B.R. 319, 324 (B.A.P. 1st Cir. 2011) (finding debtors lacked standing to challenge the chain of title under a PSA because they cannot show they were a party to the contract); *Livonia Prop. Holdings, L.L.C. v. 12840-12976 Farmington Rd. Holdings, LLC*, 717 F. Supp. 2d 724, 748 (E.D. Mich. 2010), *aff'd*, 399 F. App'x 97 (6th Cir. 2010) (finding the plaintiff lacked standing to challenge the defendant's compliance with PSA terms because the plaintiff was not a party to

or third-party beneficiary of the agreement); *In re Almeida*, 417 B.R. 140, 149 n.4 (Bankr. D. Mass. 2009). *See generally Robinson v. Select Portfolio Serv'g, Inc.*, No. 12-1768, 2013 WL 1405201, at *3–4 (6th Cir. Apr. 9, 2013) (holding that a party may not challenge an assignment to which he is not a party). Because Plaintiffs do not dispute that they were not parties to or third-party beneficiaries of the PSA at issue, the Court finds they lack standing to challenge the validity of the assignment of their loan to the Trust based on alleged violations of the PSA.

The Court finds Plaintiffs have failed to support their arguments that securitization and transfer of their Note eviscerated their obligation to pay their loan. The law clearly permits the type of assignments and securitization Plaintiffs allege invalidated their Note. Thus, the Court finds that Defendants were within their authority to assign and securitize the Note, while continuing to enforce its terms.

### 3. Negotiability of the Note and BNYM as a Holder in Due Course

Finally, Plaintiffs argue that BNYM did not have the right to enforce the DoT because it was not a holder in due course of the Note and the Note was not negotiable. Defendants argue that BNYM was a holder in due course of the Note at the time Defendants initiated foreclosure proceedings, and that the Note is negotiable instrument.

In Tennessee, a promissory note is a negotiable instrument, unless it contains a statement that it is non-negotiable, Tenn. Code Ann. § 47-3-104 (2013), and thus may be transferred to another party who receives the right to enforce the instrument, Tenn. Code Ann. §§ 47-3-201, 203, 301, 302 (2013). A "holder in due course" is a party who takes a negotiable instrument (i) for value, (ii) in good faith, and (iii) without knowledge of any apparent defect in the instrument or notice of dishonor. Tenn. Code Ann. § 47-3-302.

Here, Plaintiffs argue that BNYM is not a holder in due course of the Note and had no right to enforce the DoT because BNYM was not a proper assignee and the Note was not negotiable. (Doc. No. 1-1 at 12–14, 17–18.) As stated above, the Court finds Defendants had the right to assign and securitize the Note without altering its enforceability. Thus, the Court finds that Plaintiffs have failed to allege sufficient facts to show BNYM could not be a valid assignee of their Note. Further, Plaintiffs argument that securitization of the Note somehow changed its terms by adding conditions to payment, thus rendering it non-negotiable, is unfounded. As discussed above, securitization of a note does not alter the contractual relationship between the borrower and the note holder. Plaintiffs have not given any factual basis for the Court to find that BNYM is not a holder in due course of the Note, thus the Court finds Plaintiffs' claim lacks merit.

### B. *Failure to State a Claim*

Plaintiffs' Complaint alleges six grounds on which they claim they are entitled to relief. Defendants argue Plaintiffs' Complaint should be dismissed with respect to each claim. The Court addresses each claim in turn.

#### 1. Quiet Title

Defendants argue the Court should dismiss Plaintiffs' claim for quiet title because Defendants have a valid security interest in the Neilwood property.

"[A]n action to quiet title is based on the premise that a person with good title to certain real or personal property should not be subjected to various future claims against that title." *State of Maine v. Adams*, 672 S.E.2d 862, 866 (Va. 2009). To succeed on a claim for quiet title, "the complainant must show that he himself has the title, or else he has no right to have a cloud removed from that to which he has no title in himself." *Hoyal v. Bryson*, 53 Tenn. 139, 141

(1871); *see Grand Hotel, LP v. Cardin*, No. M2004-00996-COA-R3-CV, 2005 WL 2012778, at *4 (Tenn. Ct. App. Aug. 11, 2005). "Generally, the complainant must show he holds legal title to the disputed property." *Grand Hotel,* 2005 WL 2012778, at *5.

Here, Plaintiffs request the Court enjoin Defendants from asserting any interests, rights, or title in the Neilwood property. (Doc. No. 1-1 at 20–21.) Plaintiffs allege that Defendants did not have a financial interest in the Note and therefore could not assert any rights under the DoT. (*Id.* at 19.) Plaintiffs allege that their financial obligation under the Note was solely to BoA as their lender. (*Id.*) Thus, they conclude MERS could not have been a beneficiary or assignor of the Note because only the lender had that authority. (*Id.* at 19–20.)

Based on the discussion above regarding assignments, the Court finds Plaintiffs' arguments meritless. In addition, the Court finds Plaintiffs have failed to plead that they have fulfilled their obligation under the Note, a step which is necessary for them to obtain superior legal title to the Neilwood property. By signing the Note, Ms. Dauenhauer agreed to repay the $550,000 BoA lent her to purchase the property. (Doc. No. 12-2 at 2.) Additionally, Plaintiffs agreed in the DoT that the Trustee and its successors maintained an interest in the Neilwood property, and that MERS held legal title and all interests granted by the DoT—including the right to assign the Note—until Plaintiffs paid in full their debt under the Note. (Doc. No. 12-1 at 3, 10.) Plaintiffs have not alleged that they paid their debt in full, and thus they do not have the right under the DoT to obtain title of the property from the trustee. Because only a party with valid title may assert a claim for quiet title, Plaintiffs have failed to allege facts sufficient to show that they have legal title to the Neilwood property. Thus, the Court finds their quiet title claim cannot succeed and **GRANTS** the Motion to Dismiss.

2. Fraudulent Misrepresentation

Defendants argue Plaintiffs' fraudulent misrepresentation claim should be dismissed because it was both insufficiently plead and based on an erroneous understanding of the effects of securitization and assignment on their Note.

In Tennessee, a plaintiff claiming fraudulent misrepresentation must show:

> 1) The defendant made a representation of an existing or past fact; 2) the representation was false when made; 3) the representation was in regard to a material fact; 4) the false representation was made either knowingly or without belief in its truth or recklessly; 5) plaintiff reasonably relied on the misrepresented material fact; and 6) plaintiff suffered damage as a result of the misrepresentation.

*Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 311 (Tenn. 2008). In addition, the Tennessee Rules of Civil Procedure set a heightened pleading standard for fraud and mistake claims—similar to Federal Rule of Civil Procedure 9(b)—that requires averments of fraud "be stated with particularity." Tenn. R. Civ. P. 9.02. To meet this standard Plaintiffs must

> at a minimum, [] 'allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud. . . . allegations of fraudulent misrepresentation must be made with sufficient particularity and with sufficient factual basis to support an inference that they were knowingly made.'

*Coffey v. Foamex L.P.*, 2 F.3d 157, 161–62 (6th Cir. 1993) (quoting *Ballan v. Upjohn Co.*, 814 F. Supp. 1375, 1385 (W.D. Mich. 1992)).

Plaintiffs here allege Defendants made the following material misrepresentations that Defendants used to induce Plaintiffs into signing the Note and DOT: (1) BoA intentionally withheld its plan to enter Plaintiffs' loan into a trust under the PSA in order to apply Plaintiffs' payments to other loans; (2) BoA misrepresented the source of funding for the loan; (3) BNYM

wrongly represented to Plaintiffs that it was the holder in due course of the Note and DoT, when it actually did not know who owned the loan; (4) BNYM and ReconTrust misrepresented that Heather Malone was a BNYM employee, when she actually worked for ReconTrust at the time of the September 9, 2009, letter; (5) BoA represented that it had the authority to modify Plaintiffs' loan to induce Plaintiffs to attempt to negotiate a modification, when BoA may not have had the authority to offer such a loan modification; (6) BoA encouraged an inflated and overstated real estate appraisal of the property and then withheld this fact from Plaintiffs. (Doc. No. 1-1 at 21–24.) Plaintiffs allege that as a result of these material omissions and misrepresentations, they have suffered damages. (*Id.* at 24.)

While Plaintiffs have sufficiently identified which Defendant made each of the misrepresentations alleged above, their claim fails to set forth any facts to support how the representations were fraudulent or even mistaken. The Court finds Plaintiffs' allegations closely resemble those of the plaintiffs in *Mantesevich v. Countrywide Home Loans, Inc.*, which the court found to be "purely conclusory" and "deliberately vague and obscure." No. 1:12-cv-157, 2013 WL 1326963, at *5–6 (E.D. Tenn. March 29, 2013) (finding plaintiffs' failure to set forth facts to "demonstrate why or how defendants' conduct constituted intentional misrepresentations or fraud," fell "far short of the necessary specificity required to state a claim for fraud"). Here, the Court similarly finds that Plaintiffs have failed to allege facts sufficient to meet the pleading requirements of Tennessee Rule 9.02 or Federal Rule 9(b) and therefore they failed to state a claim upon which relief can be granted.

Plaintiffs allege that, had they known about Defendants' misrepresentations, they "would have been able to save their home from foreclosure through judicial intervention to discover the true owner of her loan." (Doc. No. 1-1 at 23.) However, even if Plaintiffs had used a judicial

process to determine which Defendant owned their loan, they have provided no facts to indicate

that they were not in default and that the Note holder did not have the right to initiate foreclosure

proceedings.[3]  Similarly, the Court finds Plaintiffs have failed to give any explanation for how

they were damaged by BoA's alleged plan to enter their loan into the PSA-governed Trust or

whether Ms. Malone worked for BNYM or ReconTrust.  The Court finds Plaintiffs have failed to

allege sufficient facts to show the six elements required for a fraud claim in any of their

individual allegations of fraudulent misrepresentation.

The Court further finds Plaintiffs fraudulent misrepresentation claims each fail as a

matter of law.  First, as discussed above, Plaintiffs misunderstand the laws surrounding

Defendants' authority to securitize, transfer, or assign their loan.  The Court finds no support for

Plaintiffs' claims that BNYM cannot be the holder in due course of the loan or that BoA

misrepresented who funded the loan or its ability to modify the loan's terms.

Finally, the Court finds Plaintiffs' overstated appraisal claim carries no legal support.

Generally, "an appraisal does not provide a basis for a fraudulent misrepresentation claim"

because it is an opinion, not an "existing fact or condition." *Homestead Grp., LLC v. Bank of

Tenn.*, 307 S.W.3d 746, 755 (Tenn. Ct. App. 2009).  While the Court recognizes that exceptions

to the general rule have been found for representations of a property's market price or that are

communicated as "an existing fact material to the transaction," *Davis v. McGuigan*, 325 S.W.3d

149, 155 (Tenn. 2010) (emphasis and quotations omitted), Plaintiffs have not pled any facts that

would permit the Court to find BoA's appraisal fit one of these narrow exceptions.  Because

Plaintiffs have not provided any facts to support their bald assertion that BoA's appraisal was

---

[3] Plaintiffs appear to deny they are in default on their loan because they allege Defendants have already been paid in full by third parties as a result of the securitization of the Note.  (Doc. No. 1-1 at 7, 13–14.)  However, the Note states that "[i]f I do not pay the full amount of each monthly payment on the date it is due, I will be in default." (Doc. No. 12-2 at 3.)  As the Court previously discussed, Plaintiffs do not allege they paid their loan in full, so any failure to make a payment would result in a default.

overstated, the Court finds Plaintiffs have failed to state a claim upon which relief can be granted and **GRANTS** the Motion to Dismiss.

### 3.  Tennessee Consumer Protection Act

Defendants argue the Court should dismiss Plaintiffs' claim under the Tennessee Consumer Protection Act ("TCPA") because, as a matter of law, the TCPA does not apply to foreclosure disputes, and even if it did, Plaintiffs' TCPA claim is again premised on their faulty assignment argument.

Tennessee Code provides that

> [a]ny person who suffers an ascertainable loss of . . .  property, real, personal, or mixed . .  as a result of the use or employment by another person of an unfair or deceptive act or practice described in § 47-18-104(b) and declared to be unlawful by this part, may bring an action [] to recover *actual damages*.

Tenn. Code Ann. § 47-18-109 (2013) (emphasis added).  Section 47-18-104 defines actionable acts under the TCPA as "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce."  Tenn. Code Ann. § 47-18-104(a) (2013).

It is settled in Tennessee that "the TCPA does not apply to allegedly deceptive conduct in foreclosure proceedings."  *Paczko v. Suntrust Mortgs., Inc.*, No. M2011-02528-COAR3-CV, 2012 WL 4450896, at *2 (Tenn. Ct. App. Sept. 25, 2012); *Gibson*, 2011 WL 3608538, at *5 ("this Court and others applying Tennessee law have held that the TCPA does not provide a cause of action for the conduct of a foreclosure") (internal quotations omitted); *Hunter v. Wash. Mut. Bank*, No. 2:08-CV-069, 2008 WL 4206604, at *5–6 (E.D. Tenn. Sept. 10, 2008) ("the TCPA does not apply to repossession and collateral disposition activities because that conduct does not affect 'the advertising, offering for sale, lease or rental, or distribution of any goods,

services, or property' as required by the TCPA") (citing *Pursell v. First Am. Nat'l Bank*, 937

S.W.2d 838, 841–42 (Tenn. 1996)).

Plaintiffs allege that because BNYM was never a valid assignee of their loan,

Defendants' attempt to foreclose Plaintiffs' property constituted an unfair and deceptive business

practice actionable under the TCPA.  (Doc. No. 1-1 at 26.)  However, Plaintiffs do not name any

cases applying the TCPA to a foreclosure action.  The Court finds that the TCPA does not cover

Plaintiffs' cause of action based on foreclosure and, therefore, their claims under the TCPA fail

as a matter of law.  Accordingly, the Court **GRANTS** the Motion to Dismiss.

### 4.  Violation of Fair Debt Collections Practices Act

Defendants argue that the Court should dismiss Plaintiffs' claims under the Fair Debt

Collections Practices Act ("FDCPA") because they are based on Plaintiffs' erroneous theory that

the Note was not properly assigned and because the FDCPA does not apply to BNYM and

ReconTrust, as they are not "debt collectors."

Under the FDCPA, "debt collectors" may not make a "false, deceptive, or misleading

representation" in connection with collecting a debt.  15 U.S.C. § 1692e (2012).  The FDPCA

also prohibits debt collectors from using "unfair or unconscionable means" to collect debts,

including:

> (6) Taking or threatening to take any nonjudicial action to effect
> dispossession or disablement of property if– (A) there is no present
> right to possession of the property claimed as collateral through an
> enforceable security interest; (B) there is no present intention to
> take possession of the property; or (C) the property is exempt by
> law from dispossession or disablement.

15 U.S.C. § 1692f (2012).  A "debt collector" is defined as:

> any person who uses any instrumentality of interstate commerce or
> in the mails in any business the principal purpose of which is the
> collection of any debts, or who regularly collects or attempts to

collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . . the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. The term does not include– (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or bona fide escrow arrangement; (iii) concerns a debt which was not in default at the time it was obtained by such person;

15 U.S.C. § 1692a(6) (2012). By contrast, a "creditor" is:

Any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.

15 U.S.C. § 1692a(4).

The Sixth Circuit has determined that a company whose principal purpose is to extend credit rather than collect debts is not a debt collector under the FDCPA. *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 411 (6th Cir. 1998) (citing *Meads v. Citicorp Credit Servs., Inc.*, 686 F. Supp. 330, 333 (S.D. Ga. 1988) ("actual creditors—the extenders of credit or bona fide assignees—generally are not subject to the Act . . . [unless] the creditor attempts to collect the debt under an assumed name, or if the creditor was assigned the debt after default for the specific purpose of collection.")).

Here, Plaintiffs' claim under the FDCPA appears to be premised on their argument that the Note was not validly assigned to BNYM. (Doc. No. 1-1 at 24.) Plaintiffs allege that because there was no valid assignment of their loan: (1) BNYM's representation that it was the beneficiary of the DoT was false; (2) BNYM could not have validly appointed ReconTrust as substitute trustee to the DoT; (3) ReconTrust's letters holding itself out as a substitute trustee

were false; and thus, (4) neither ReconTrust nor BNYM were creditors, but rather debt collectors who violated the FDCPA by making false representations to Plaintiffs. (*Id.* at 24–25.)

Plaintiff has not alleged that the principal purpose of BNYM or ReconTrust is the collection of debts or that BNYM was assigned Plaintiffs' loan for the specific purpose of debt collection. The Complaint also contains no factual allgations that BNYM or ReconTrust attempted to foreclose under assumed names. Therefore the Court finds that neither BNYM nor ReconTrust falls within the FDCPA's definition of a "debt collector," and neither is subject to the FDCPA.

Even if the FDCPA did apply, the Court finds Plaintiffs' claim suffers from the same fatal flaw as their other claims, in that it is premised on an unfounded claim of invalid assignment and securitization. Because the Court finds that Plaintiffs have alleged no factual or legal basis for their assertion that BNYM did not own their loan, Plaintiffs' argument that BNYM misrepresented itself as the DoT beneficiary has no merit. Likewise, BNYM, as beneficiary of the DoT, had the right to appoint ReconTrust as substitute trustee. The Court finds Plaintiff has not alleged BNYM or ReconTrust made any false or misleading representations, or used unfair or unconscionable means in their attempt to foreclose on Plaintiffs' loan, as required to find liability under the FDCPA. Therefore, even were BNYM and ReconTrust subject to the FDCPA, their actions did not violate it. The Court therefore **GRANTS** the Motion to Dismiss.

5. Slander of Title

Defendants argue Plaintiffs' slander of title claim should be dismissed because it is both time barred and insufficiently plead.

To allege a claim for slander of title, a plaintiff must show: "(1) that it has an interest in the property, (2) that the defendant published false statements about the title to the property, (3) that the defendant was acting maliciously, and (4) that the false statements proximately cause the plaintiff a pecuniary loss." *Brooks v. Lambert*, 15 S.W.3d 482, 484 (Tenn. Ct. App. 1999) (citation omitted). "To assert this cause of action, the plaintiff must allege 'malice . . . in express terms or [by] any such showing of facts as would give rise to a reasonable inference that [the defendant acted maliciously.]'" *Id.* (quoting *Waterhouse v. McPheeters*, 145 S.W.2d 700, 704 (Tenn. 1940)).

Here, Plaintiffs offer only conclusory statements regarding the elements of slander of title with no factual support. Plaintiffs' entire factual allegation regarding slander of title is as follows:

> In the present case, Defendants, MERS and AWL/BOA, caused a lien to be placed against Plaintiffs' property by recording a Deed of Trust with the Davidson County Register of Deeds.
>
> MERS, AWL/BOA were not owed a debt nor did they have the right to payment and therefore placing a lien on Plaintiffs' property constitutes slander of title. Defendants, MERS and AWL/BOA, with malicious intention to defraud the Plaintiffs, cause a lien to be placed against Plaintiffs' property, which in turn resulted in pecuniary loss to Plaintiff [sic].
>
> As a direct and proximate result of Defendants' actions, Plaintiffs have and continued to suffer damages.

(Doc. No. 1-1 at 28–29.) The Court finds Plaintiffs fail to plead any factual allegations that Defendants acted in bad faith. Further, Plaintiffs have not adequately supported their assertions that they do not owe MERS or BoA a debt or that recording the DoT was wrongful. The Court finds Plaintiffs have failed to state a claim upon which relief can be granted. The Court does not

reach the issue of statute of limitations as the claim was insufficiently pled. The Court **GRANTS** the Motion to Dismiss.

### 6. Civil Conspiracy

Defendants argue that because a civil conspiracy claim must be based on an underlying tort and none of Plaintiffs' tort claims can survive, the Court must dismiss Plaintiffs' claim of civil conspiracy.

To establish a claim for civil conspiracy a plaintiff must allege:

> (1) a common design between two or more persons, (2) to accomplish by a concerted action an unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury. Conspiracy claims must be pled with some degree of specificity. Conclusory allegations, however, unsupported by material facts will not be sufficient to state such a claim.

*Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 38 (Tenn. Ct. App. 2006) (citations omitted). "In addition, civil conspiracy requires an underlying predicate tort allegedly committed pursuant to the conspiracy." *Freeman Mgmt. Corp. v. Shurgard Storage Ctrs., LLC*, 461 F. Supp. 2d 629, 642 (M.D. Tenn. 2006). Thus, in Tennessee, "[i]f the underlying tort is not actionable, a plaintiff's claim for civil conspiracy fails." *Morgan v. Brush Wellman, Inc.*, 165 F. Supp. 2d 704, 721 (E.D. Tenn. 2001) (citing *Forrester v. Stockstill*, 869 S.W.2d 328, 330 (Tenn. 1994)).

Because the Court has dismissed all potential predicate tort claims, there is no underlying claim upon which Plaintiffs may properly base their claim of civil conspiracy. Thus, the Court holds this claim fails as a matter of law and **GRANTS** the Motion to Dismiss.

### C. Failure to Join Frank Dauenhauer

Because all of Plaintiffs' claims have been dismissed under Federal Rule of Civil Procedure 12(b)(6), the Court declines to analyze Defendants' arguments under Rule 12(b)(7).

**IV.** **CONCLUSION**

For the reasons above, the Court **GRANTS** Defendants' Motion (Doc. No. 11) and

**DISMISSES** Plaintiffs' Complaint.   Plaintiffs' Motion to Reconsider (Doc. No. 32) is therefore

**TERMINATED AS MOOT**.  This Order terminates the Court's jurisdiction over this case, and

the case is **DISMISSED**.

It is so ORDERED.

Entered this the __28th_____ day of May, 2013.

_____
JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT