NOT FOR FULL-TEXT PUBLICATION
File Name: 14a0275n.06

No. 13-5810

**FILED**
Apr 15, 2014
DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | |
|---|---|
| DOLORES-ROSE DAUENHAUER;<br>HELEN E. CHAMBERLAIN,<br><br>      Plaintiffs-Appellants,<br><br>v.<br><br>THE BANK OF NEW YORK MELLON,<br>as Trustee for the Certificate-Holders,<br>CWALT, Inc., Alternative Loan Trust 2007 –<br>12T1 Mortgage Pass Through Certificates,<br>Series 2007-12T1, fka The Bank of New York;<br>BANK OF AMERICA, N.A.; MORTGAGE<br>ELECTRONIC RESGISTRATION SYSTEMS,<br>INC., (MERS) and its parent company<br>MERSCROP, Inc.; RECONTRUST<br>COMPANY, N.A., as Alleged Successor Trustee;<br>JOHN AND JANE DOES 1-100, as Unknown<br>Claimants in interest in 514 Neilwood Drive,<br>Nashville, TN 37205; MERSCROP HOLDINGS,<br>INC., fka Merscrop, Inc.<br><br>      Defendants-Appellees. | ON APPEAL FROM THE<br>UNITED STATES DISTRICT<br>COURT FOR THE MIDDLE<br>DISTRICT OF TENNEESSEE |

**BEFORE:** SUHRHEINRICH, GRIFFIN and KETHLEDGE, Circuit Judges.

    **PER CURIAM.** This is a civil case concerning claims against five institutions challenging foreclosure on residential property. Plaintiff-Appellants Dauenhauer and Chamberlain (collectively "Borrowers") brought the underlying action against Defendant-Appellees The Bank of New York Mellon ("BNYM"), Bank of America, N.A. ("BANA"), Mortgage Electronic Registration Systems, Inc. ("MERS"), MERSCORP Holdings, Inc. ("MERSCORP"), and ReconTrust Company, N.A. ("ReconTrust") (collectively "Defendants")

1

after BNYM foreclosed on property Borrowers owned, bringing claims for quiet title, fraudulent misrepresentation, violation of the Tennessee Consumer Protection Act, violation of the Fair Debt Collection Practices Act, slander of title, and civil conspiracy. The district court granted Defendants' motion to dismiss and entered final judgment in their favor. We affirm.

## I. Background

### i. Facts

Dauenhauer and Chamberlain own property located at 514 Neilwood Drive in Nashville, Tennessee. Dauenhauer entered into a loan to finance the purchase of the Property, executing a promissory note ("Note"). Both Borrowers executed a Deed of Trust ("DOT")[1] in favor of America's Wholesale Lender Company ("America's Wholesale") with MERS – an electronic mortgage recordation database – as beneficiary and nominee for the amount of $555,000.00. Borrowers subsequently received letters indicating they were in default on their loan transaction, and that Defendants would conduct a non-judicial foreclosure sale of the Property.

Borrowers sought to challenge Defendants' foreclosure on their Property. Borrowers allege that their loan was securitized in that it was sold, along with other loans, to a pool of investors represented by BNYM, acting as the Trustee for the Securitized Trust. Borrowers claim that, due to the securitization of the loan, title to the Property had been clouded and that none of the Defendants hold any interest in the Property. Borrowers also maintain that the

---

[1] "A deed of trust is 'an instrument in use in many states, taking the place and serving the uses of a common-law mortgage, by which the legal title to real property is placed in one or more trustees, to secure the repayment of a sum of money or the performance of other conditions.'" *Cadence Bank, N.A. v. Latting Rd. Partners, LLC*, 699 F. Supp. 2d 1033, 1035 n.1 (W.D. Tenn. 2010) (quoting Black's Law Dictionary 503 (4th ed. 1968) ("Deed of Trust")). The holder of legal title under a mortgage, such as a trustee, can foreclose on the property in the event of a default. *Malone v. Bank of New York Mellon*, 3:13-CV-00518, 2013 WL 4508709, at *4 (M.D. Tenn. Aug. 23, 2013) (citing Tenn.Code Ann. § 47–9–601 *et seq.*; *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 38 (Tenn. Ct. App. 2006)).

assignments of the Deed of Trust were invalid.

In turn, Borrowers allege six causes of action: (1) quiet title; (2) fraudulent misrepresentation; (3) violation of the Tennessee Consumer Protection Act; (4) violation of the Fair Debt Collection Practices Act; (5) slander of title; and (6) civil conspiracy. Borrowers also requested declaratory relief to prevent Defendants from asserting any interest in the Property or claims based on the loan. Borrowers allege that they have not received an accounting of their loan and, until they receive one, deny that they are in default.

### ii. Procedure

Borrowers filed a complaint in the Davidson County Circuit Court, and later filed for a temporary restraining order, seeking to challenge Defendants' planned non-judicial foreclosure sale of their property on October 15, 2012. A state court judge issued a restraining order preventing the sale, pending a state court hearing.

Defendants removed the complaint to the U.S. District Court of the Middle District of Tennessee. Borrowers moved for a temporary restraining order, alleging that BNYM and ReconTrust had rescheduled the non-judicial foreclosure sale of their property for October 29, 2012. The district court denied the motion and dissolved the state court temporary restraining order. Borrowers filed a Motion to Reconsider, and Defendants filed a Response in Opposition.

Defendants filed a Motion to Dismiss along with supporting memorandum. Borrowers filed a Response in Opposition, and Defendants filed a Reply. The district court granted Borrowers leave to file a Sur-Reply, which Borrowers later filed. The district court entered an order finding that Borrowers' securitization theories failed as a matter of law, dismissing the Complaint for failure to state a claim upon which relief could be granted, and terminating as moot Borrowers' Motion to Reconsider. Borrowers appealed that Order.

## I.     JURISDICTION

The district court had federal question jurisdiction under 28 U.S.C. § 1331, which affords the district courts original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States, based on allegations by Borrowers that Defendants violated the Fair Debt Collection Practices Act.  The district court had supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367.  This Court has jurisdiction over this appeal under 28 U.S.C. § 1291, which provides the courts of appeals jurisdiction over appeals from all final decisions of the district courts.  The district court issued its final order dismissing all claims against Defendants on May 29, 2013.  Borrowers filed timely notice of appeal on June 14, 2013.

## II.     STANDARD OF REVIEW

We review de novo a district court's grant of a motion to dismiss based on Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  *Buck v. Thomas M. Cooley Law School*, 597 F.3d 812, 816 (6th Cir. 2010).  We construe the complaint in the light most favorable to the plaintiff and accept all well-pled factual allegations as true. *LULAC v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007).  However, we "need not accept as true legal conclusions or unwarranted factual inferences" and plaintiffs must plead "more than bare assertion[s] of legal conclusions."  *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360-61 (6th Cir. 2001) (quotations omitted).

A complaint fails to state a claim where it fails to comply with the pleading requirements of Federal Rule of Civil Procedure 8(a).  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Rule 8(a) requires a plaintiff to provide "a short and plain statement of the claim showing that [he] is entitled to relief," but more than mere

"labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. To survive a Rule 12(b)(6) motion, "[t]he factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *LULAC*, 500 F.3d at 527 (emphasis omitted).

### III. ANALYSIS

#### 1) Motion to Strike Borrowers' Addendum

Borrowers attach to their brief, and rely on therein, a document entitled "Addendum: Fannie Mae Report." Defendants move us to strike this document because it was not part of the record before the district court. Under Federal Rule of Appellate Procedure 10(a), the record on appeal contains only the papers and exhibits filed with the district court, transcripts of any district court proceedings, and a certified copy of the docket entries by the district court clerk. Fed. R. App. P. 10. Because this document does not fall within Rule 10, we grant the motion to strike. *See Wilson v. Bowlen*, 52 F.3d 327 (6th Cir. 1995) (unpublished) ("[T]his court must grant the Motion to Strike, as this document was never made part of the record in district court.").

#### 2) Considering Evidence

Borrowers assert that the district court erred in granting the motion to dismiss "without requiring one shred of evidence." Borrowers' argument has two components. First, they dispute the district court's denial of their Motion to Realign the Parties. Second, Borrowers allege that the district court erred in failing to impose an evidentiary production burden on, and shift the burden of proof to, Defendants. Both arguments fail.

Borrowers filed a "Motion to Realign the Parties" below, asking the district court to

5

rearrange Defendants to the positions of plaintiffs in the case. Borrowers sought to shift the burden of proof to Defendants, requiring them to provide affirmative evidence of an actionable loss and their right to foreclose. The district court denied that motion. Defendants claim that we lack jurisdiction over this issue because in their Notice of Appeal, Borrowers did not specifically identify that order. Defendants are incorrect. See *Caudill v. Hollan*, 431 F.3d 900, 904-05 (6th Cir. 2005) (noting an appeal to the order directing entry of final judgment suffices to appeal all non-final orders and rulings).

Nevertheless, Borrowers' assertions are without merit. Specifically, Borrowers maintain that Defendants did not produce evidence to establish a complete chain of title, failed to "provide[] any evidence that the Note was transferred to [Defendant] BNYM pursuant to the terms of the Pooling and Servicing Agreement," and offered no "evidence that [Defendants] have the original note." As noted above, the standard for dismissal under Rule 12(b)(6) is whether the plaintiff has "state[d] a claim upon which relief can be granted," not whether a defendant has evidence to defend the claims. Fed. R. Civ. P. 12(b)(6). Further, at no time in the underlying action would the Defendants have the burden of proof, which was Borrowers' to carry. *See Rhodes v. Wood*, 28 S.W. 294, 294 (1894) ("It is admitted that the general rule in Tennessee is to the effect that . . . the burden of proof rests on the complainant."). Thus, the district court did not err in dismissing Borrowers' complaint for failing to impose an evidentiary production burden or shift the burden of proof to Defendants.

### 3) Securitization Arguments

Borrowers further argue that the district court erred in analyzing the effects of securitization, assignment, and pooling of their mortgage. Borrowers claim that the district court "oversimplified some very complex principles" and failed "to actually apply the law to the very

6

specific set of facts in this case." Borrowers argue that dismissal was inappropriate because Defendants have not shown that the trust was properly established, that the trust properly acquired the Loan, or that the trust still exists. We find that the district court properly analyzed Borrowers' securitization arguments.

### a) Validity of MERS as Nominee

Borrowers first argue that the MERS assignment of the Deed of Trust was invalid, challenging the assignment of the Deed of Trust from MERS to the BNYM and the validity of MERS as nominee. The district court did not err in finding the assignment to MERS valid, and in dismissing Borrowers' claims to the extent those claims were based on this theory.

MERS is a company that provides mortgage recording services to lenders and "allows the lenders to trade the mortgage note and servicing rights on the market" with MERS maintaining electronic recordings of each transaction. *Mortg. Elec. Regis. Sys., Inc. v. Neb. Dep't of Banking and Fin.*, 704 N.W.2d 784, 787 (Neb. 2005). "'When the mortgage loan is repaid, MERS, as agent grantor, conveys the property to the borrower.'" *Id*.

Courts nationally, including Tennessee's, have consistently approved MERS' role in loans when designated as the nominee and beneficiary under a deed of trust. *See Samples v. Bank of Am., N.A.*, No. 3:12-CV-44, 2012 WL 1309135, at *3-4 (E.D. Tenn. April 16, 2012) (finding claims based on invalid assignment or the role of MERS in mortgage transaction – where the deed of trust named MERS as the beneficiary and nominee for the lender and its assigns – failed as a matter of law); *Golliday v. Chase Home Fin., LLC*, No. 1:10-cv-532, 2011 WL 4352554, at *7 (W.D. Mich. Aug. 23, 2011) ("Over the twenty years that MERS has existed, borrowers who have defaulted on their loan obligations have attempted, without success, to attack the validity of the mortgage based on the involvement of MERS.").

Here, the Deed of Trust names MERS as "nominee for Lender and Lender's successors and assigns" and as "the beneficiary under this Security Instrument." Courts have held that this identical language grants MERS the authority "to act as the agent of any valid note holder, including assigning a deed of trust and enforcing a note." *Samples*, 2012 WL 1309135, at *4. The Deed of Trust also provides that "the Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower." Further, the Note states, "I understand that the Lender may transfer the Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'" Consequently, the instruments Borrowers signed to enter into the loan agreement expressly permitted sale or assignment.

The district court correctly found that MERS' role was valid and that MERS could validly assign the Note. Thus, it did not err in dismissing claims based on those allegations.

### b) Securitization and Separating the Deed of Transfer and Note

Borrowers next argue that any assignment or transfer of the Note was invalid based on the separation of the Note from the Deed of Trust and failure to record the assignments. Further, Borrowers claim that securitization of the Note resulted in their debt being satisfied by third parties. The district court properly rejected those arguments, finding that under Tennessee law the deed of trust follows the note, and that securitization did not alter Borrowers' obligation to pay back their loan.

It is well-settled under Tennessee law that the transfer of a note automatically carries with it the lien created by the accompanying deed of trust or other instrument securing it. *See, e.g., W.C. Early Co. v. Williams*, 186 S.W. 102, 103-04 (Tenn. 1916) ("It is a well-settled rule with us that the lien of a mortgage or trust deed passes, without a special assignment thereof, to the

indorsee of a note or transferee of the debt secured by the instrument."); *Clark v. Jones*, 27 S.W. 1009, 1010 (Tenn. 1894) ("The transfer of the note, without more, carried with it the lien created by the deed of trust."); *Samples*, 2012 WL 1309135, at *4 ("[p]laintiffs' argument that the deed of trust is defective because it was split or severed from the note is without merit."). Further, Tennessee law does not require note assignees to record assignments in order to enforce notes against third parties. *W.C. Early Co.*, 186 S.W. at 103 ("in this state we have no statutory requirement that the assignee of notes secured by a mortgage or deed of trust must, in order to the preservation of his lien as against third persons, record an assignment of the instrument which secures the same.").

We are aware of no authority for the proposition that a loan becomes unenforceable because it was securitized. The district court appropriately noted that, as a matter of law, securitization alone does not render a note or deed of trust unenforceable and does not alter a borrower's obligation to pay back his loan. *Samples*, 2012 WL 1309135, at *3-5. Securitization "would not absolve [a] plaintiff from having to make payments on his loan or somehow shield plaintiff's property from foreclosure." *Searcy v. EMC Mortg. Corp.*, No. 1:10-CV-0965-WBH, 2010 U.S. Dist. LEIS 119975, at *2 (N.D. Ga. Sept. 30, 2010). Rather, securitization creates "a separate contract, distinct from [a p]laintiff's debt obligations under the reference credit (i.e. the Note)." *Larota-Florez v. Goldman Sachs Mortg. Co.*, 719 F. Supp. 2d 636, 642 (E.D. Va. 2010).

Thus, the district court did not err in rejecting Borrowers' claims based on the argument that securitization of the Note eliminated their obligation to pay back their loan, and that separation of the Note and Deed of Trust invalidated their loan.

### c) Challenge to Pooling and Servicing Agreement

Borrowers also allege that Defendants' securitization of the Note into the Trust, violated the Trust's Pooling and Servicing Agreement and that therefore BNYM, as trustee, did not have the authority to foreclose on behalf of the trust. The district court appropriately dismissed this argument, finding that Borrowers lack standing to assert violations of the Agreement.

Courts have consistently rejected borrowers' requests to have mortgage assignments and foreclosures invalidated due to non-compliance with Pooling and Servicing Agreement provisions, based on borrowers' lack of standing. *See Livonia Prop. Holdings, L.L.C. v. 12840-12976 Farmington Rd. Holdings, LLC*, 717 F. Supp. 2d 724, 748 (E.D. Mich. 2010), *aff'd*, 399 F. App'x 97 (6th Cir. 2010) (finding the plaintiff lacked standing to challenge the defendant's compliance with Pooling and Servicing Agreement terms because the plaintiff was not a party to or third-party beneficiary of the agreement); *In re Correia*, 452 B.R. 319, 324 (B.A.P. 1st Cir. 2011) (finding debtors lacked standing to challenge the chain of title under a Pooling and Servicing Agreement because they cannot show they were a party to the contract). This rule derives from the general principle of contract law that prohibits parties from challenging an assignment where they are not contract parties or third-party beneficiaries thereof. *See Owner-Operator Indep. Drivers Ass'n v. Concord Efs*, 59 S.W.3d 63, 68 (Tenn. 2001). Borrowers do not dispute that they were not parties to or third-party beneficiaries of the Pooling and Servicing Agreement at issue. As a result, the district court rightly determined Borrowers lack standing.

Thus, the district court did not err in dismissing claims regarding the validity of the assignment of Borrower's loan to the Trust based on alleged violations of the Pooling and Servicing Agreement.

#### d)  BNYM as a Holder in Due Course

Finally, Borrowers argue that the district court's ruling on the securitization issue was based on the erroneous belief that BNYM was the holder in due course of the Note.

In the district court, Borrowers alleged that BNYM was not a holder in due course of the Note because BNYM was not a proper assignee and the Note was not negotiable. The district court rejected those arguments, finding that "[Borrowers] have not given any factual basis for the Court to find that BNYM is not a holder in due course of the Note."

Borrowers bore the burden to make factual allegations sufficient to support their claim that BNYM was not a holder in due course.  Because Borrowers failed to do so, the district court properly rejected their contention.  Additionally, the district court never made a finding that BNYM was the holder in due course; only that Borrowers failed to plead facts that it was not. Because Borrowers failed to carry their burden, and the district court never affirmatively found BNYM was a holder in due course, the district court committed no error.

In sum, the district court did not err in analyzing Borrowers' securitization, assignment, and pooling of mortgages arguments.

### 4)  Failure to State a Claim

Borrowers assert that the district court erred in dismissing their complaint for failure to state a claim for which relief may be granted.  Borrowers' complaint alleges six grounds, and we address each in turn.

#### a)  Quiet Title

Borrowers assert that the district court erred in dismissing their claim for quiet title, alleging errors in assignment of the Note.  The district court dismissed Borrowers' claim for quiet title, finding that Borrowers failed to plead a necessary component of that claim – that they

11

fulfilled their obligation under the Note. We find no error.

To succeed on a claim for quiet title, "the complainant must show that he himself has the title, or else he has no right to have a cloud removed form that to which he has no title to himself." *Hoyal v. Bryson*, 53 Tenn. 139, 141 (1871).

By signing the Note, Ms. Dauenhauer agreed to repay the money Bank of America lent her to purchase the property. Borrowers agreed in the Deed of Trust that MERS held legal title and all interests granted by the Deed of Trust until Borrowers paid their debt in full under the Note. Because Borrowers have not alleged that they paid their debt in full, they do not have the right to obtain title of the property from the trustee. Since Borrowers did not allege sufficient facts to show they have legal title, the district court did not err in dismissing the quiet title claim.

### b) Fraudulent Misrepresentation

Borrowers argue that the district court should not have dismissed their fraudulent misrepresentation claim because it confounded the effects of securitization, transfer and assignment of their Note. Further, Borrowers claim the district court overlooked Defendants' duty to disclose information under the Truth in Lending Act and Real Estate Settlement Procedures Act. The district court dismissed Borrowers' fraudulent misrepresentation claims for failure to comply with the heightened pleading standard for fraud. We find no error.

Akin to Federal Rule of Civil Procedure 9(b), the Tennessee Rules of Civil Procedure also set a heightened pleading standard for fraud claims, mandating that they "be stated with particularity." Tenn. R. Civ. P. 9.02. This requires allegations of time, place, and content of the alleged misrepresentation, the fraudulent intent of the defendant, and the resulting injury. *Coffey v. Foamex LP*, 2 F.3d 157, 161-62 (6th Cir. 1993) (quoting *Ballan v. Upjohn Co.*, 814 F. Supp. 1375, 1885 (W.D. Mich. 1992)).

12

In their Complaint, Borrowers allege six material omissions or misrepresentations, and provide the sources thereof. Borrowers claim that had they known about these misrepresentations, they "would have been able to save their home from foreclosure through judicial intervention to discover the true owner of [their] loan." *Id*. at 23. Nonetheless, as the district court noted, Borrowers' "claim fails to set forth any facts to support how those representations were fraudulent or even mistaken." Borrowers provide no facts to indicate that they were not in default, or that the Note holder did not have the right to initiate foreclosure proceedings. Borrowers do not explain how they were injured by Bank of America's alleged plan to place their loan into the Trust, or Defendants' failure to identify the true lender. *Id*. Instead, Borrowers repeat their arguments regarding the alleged effects of securitization and improper assignment, which we rejected above.[2] We find Borrowers failed to comply with the heightened pleading requirements for fraudulent misrepresentation.

On appeal, Borrowers argue that the Truth in Lending and Real Estate Settlement Procedures Act "create a duty to disclose on behalf of [Defendants]." As noted, the district court did not base its decision on the absence of a duty to disclose, but on Borrowers' failure to comply with fraud pleading requirements. Even still, Borrowers fail to proffer legal support for their claim regarding Defendants' duty to disclose. Tennessee law does not impose such a duty on banks with respect to their borrowers absent special circumstances, none of which are present here. *Power & Tel. Supply Co., Inc. v. SunTrust Banks, Inc.*, 447 F.3d 923, 932 (6th Cir. 2006).

---

[2] Borrowers also do not address the district court's finding dismissing their overstated appraisal claim, one of the alleged misrepresentations. For that reason, they have abandoned their appeal as to that claim. *Fulakis v. Columbus Public Schools*, No. 02-3374, 53 Fed. App'x 340, 341 (6th Cir. Dec. 17, 2002) (finding that appellant abandoned her appeal by failing to address the reasons her suit was dismissed in her brief); *see also United States v. Johnson*, 440 F.3d 832, 845-846 (6th Cir. 2006) ("appellant abandons all issues not raised and argued in its initial brief on appeal").

Thus, the district court did not err in dismissing the fraudulent misrepresentation claim.

### c) Tennessee Consumer Protection Act

Borrowers argue that the district court erred in dismissing their Tennessee Consumer Protection Act claim because "the transaction at issue here . . . clearly involves trade, commerce, and a consumer transaction." However, as the district court noted, "the [Tennessee Consumer Protection Act] does not apply to allegedly deceptive conduct in foreclosure proceedings" (citing *Paczko v. Suntrust Mortgages, Inc.*, M2011-02528-COA-R3CV, 2012 WL 4450896 (Tenn. Ct. App. Sept. 25, 2012)). Borrowers do not present any cases applying the Tennessee Consumer Protection Act to a foreclosure action. Because the district court correctly ruled that the Tennessee Consumer Protection Act does not cover Borrowers' cause of action based on foreclosure, it correctly dismissed that claim.

### d) Fair Debt Collections Practices Act

Borrowers argue that the district court erred in dismissing their Fair Debt Collections Practices Act claim. The district court dismissed this claim, finding that Borrowers did not state a claim for violation of the Act because they did not allege BNYM or ReconTrust are "debt collectors." We find no error.

The Fair Debt Collections Practices Act applies to "debt collectors," but not to "creditors." 15 U.S.C. § 1692(e); *see also Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 411 (6th Cir. 1998) (holding that a company whose principal purpose is to extend credit rather than collect debts is not a debt collector under the Fair Debt Collections Practices Act). A "debt collector" is defined as

> Any person who uses any instrumentality of interstate commerce or in the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another . . . the term includes any creditor who,

14

in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. The term does not include- (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or bona fide escrow arrangement; (iii) concerns a debt which was not in default at the time it was obtained by such person;

15 U.S.C. § 1692(a)(6). Borrowers did not allege that BNYM or ReconTrust fit within this definition – namely "that the principal purpose of BNYM or ReconTrust is the collection of debts, that BNYM was assigned Borrower's loan for the specific purpose of debt collection, or that BNYM or ReconTrust attempted to foreclose under assumed names." Thus, the district court correctly concluded that neither BNYM nor ReconTrust was subject to the Fair Debt Collections Practices Act, and dismissed Borrowers claims under that statute.

### e) Slander of Title

Borrowers argue that the district court erred in finding that they failed to state a claim for slander of title. The district court dismissed Borrowers' slander of title claim because they failed to plead malice, a necessary element of that claim. We find no error.

In order to state a claim for slander of title in Tennessee, a plaintiff must demonstrate four elements: "(1) that it has an interest in the property, (2) that the defendant published false statements about the title to the property, (3) that the defendant was acting maliciously, and (4) that the false statements proximately caused the plaintiff a pecuniary loss." *Brooks v. Lambert*, 15 S.W.3d 482, 484 (Tenn. Ct. App. 1999). Malice is a necessary component of a slander of title claim. *Waterhouse v. McPheeters*, 145 S.W.2d 766, 767 (Tenn. 1940). Borrowers failed to plead that Defendants maliciously claimed title to the property. Thus, the district court properly dismissed Borrowers' slander of title claim.

15

### f) Civil Conspiracy

Borrowers argue that because their underlying claims should have survived the motion to dismiss, their civil conspiracy claim also should have survived. The district court dismissed Borrowers' claim because there was no underlying claim upon which Borrowers may base their civil conspiracy claim. We find no error.

In order to state a cause of action for conspiracy, a plaintiff must demonstrate the existence of an underlying predicate tort. *BancorpSouth Bank v. Herter*, 643 F. Supp. 2d 1041 (W.D. Tenn. 2009). Because Borrowers' complaint failed to state a claim upon which relief may be granted, the district court correctly dismissed Borrowers' civil conspiracy claim.

In sum, because each of Borrowers' six claims failed to state a claim upon which relief can be granted, the district court properly granted Defendants' motion to dismiss.

### IV.    CONCLUSION

The judgment of the district court is affirmed in all respects.

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

Deborah S. Hunt
Clerk

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: April 15, 2014

Ms. Kelli Anne Burns
Ms. Carol A. Molloy

Re: Case No. 13-5810, *Dolores-Rose Dauenhauer, et al v. The Bank of New York Mellon, et al*
Originating Case No. : 3:12-cv-01026

Dear Counsel,

The Court issued the enclosed (Order/Opinion) today in this case.

Sincerely yours,

s/Laura A. Jones
Case Manager
Direct Dial No. 513-564-7023

cc: Mr. John Matthew Kroplin
    Mr. Keith Throckmorton

Enclosure

Mandate to issue